UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUL 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-426-GWU

JACKIE LEWIS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff previously brought <u>Lewis v. Secretary of Health and Human Services</u>, Ashland Civil Action No. 02-45 (E.D. Ky.) to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). After a period of reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of January 10, 2003 (Tr. 296-306), another negative decision was entered. The appeal was eventually redocketed as <u>Lewis v. Barnhart</u>, London Civil Action No. 02-45 (E.D. Ky.), but was again remanded to the agency for further consideration in January, 2003. After another negative agency decision, the appeal is once again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v.</u>

1

Lewis

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the

2

Lewis

Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Mr. Lewis filed his original applications for DIB and SSI in 1994 (Tr. 58-61, 93-5), and several administrative decisions were issued denying his applications. As was previously mentioned, remands were entered by this Court on March 3, 2000 (Tr. 296-307) and on January 10, 2003. On both occasions, the remands were specifically made for one purpose. The Court found that there was an inconsistency between the mental restrictions cited in a hypothetical question from

4

Lewis

the Administrative Law Judge (ALJ) to the vocational expert (VE), and the restrictions given by Mr. James Leisenring, a psychologist who had examined the plaintiff in 1998.[1] Although testimony from a medical expert (ME), Dr. Dixie Moore, was obtained after the first remand (Tr. 378-80), the Court held in its January, 2003 Memorandum Opinion that this testimony was "insufficiently detailed to overcome the prior opinion of greater restrictions" given by Mr. Leisenring, an examining source. For the opinion of an examining source to be overcome by that of a nonexaminer, the examiner must have access to the entire record, and clearly explain the reasons that he disagrees with the examiner. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

After the most recent remand, Mr. Lewis was sent for another examination by Mr. Leisenring (Tr. 434-9), and the ALJ obtained telephonic testimony from another ME, Dr. Doug McKeown (Tr. 471-3).

Mr. Leisenring found that Mr. Lewis had even more mental limitations that he had after his 1998 examination. In 1998, he had administered IQ testing which showed a verbal IQ score of 68, a performance IQ score of 70, and a full-scale IQ score of 66, but this was thought to be due to malingering. (Tr. 258). The plaintiff

---

[1]The only mental health opinion apart from Mr. Leisenring came from a one-time examination by Dr. Shelle Dietrich in 1994, but Dr. Dietrich subsequently lost her license to practice psychology in Kentucky. Consequently, her opinion could reasonably have been disregarded.

5

was described as being rather tense and nervous, feeling nervous and shaky, and not socializing. (Tr. 256-82). He was taking Valium on prescription from his family physician. (Tr. 258). Mr. Leisenring had diagnosed an anxiety disorder and estimated low average intelligence. (Tr. 259). Mr. Leisenring had opined that the plaintiff would have a "seriously limited but not precluded" ability to behave in an emotionally stable manner, and "most probably" would experience difficulty dealing with work stresses. (Tr. 261-3).

In his November, 2003 examination, Mr. Leisenring also found the plaintiff to look tense, anxious, and uncomfortable. (Tr. 434-5). Mr. Lewis described having a few friends, and a girlfriend, but otherwise had limited social interaction. (Tr. 435). He was taking Xanax for anxiety. (Tr. 436). On testing, Mr. Leisenring found no consistent pattern of malingering, and considered IQ testing results to be adequate. (Id.). The plaintiff on this occasion obtained a full-scale IQ score of 69. (Id.). Mr. Leisenring's impression was that of a dysthymic disorder, an anxiety disorder, and "mild mental retardation to borderline intellectual functioning." (Tr. 437-8). He prepared a mental residual functional capacity assessment stating that the plaintiff had "no" useful ability to deal with work stresses or understand, remember, and carry out complex instructions, and a "seriously limited but not precluded" ability to relate to co-workers, use judgment, understand, remember, and carry out detailed

Lewis

but not complex instructions, behave in an emotionally stable manner, and relate predictably in social situations. (Tr. 440-1).

Therefore, at the time of the most recent administrative hearing, all of the evidence from the examining sources indicated greater restrictions than were found by the ALJ.

Dr. McKeown's testimony as ME was concerned primarily with discrediting the IQ scores obtained by Mr. Leisenring. He commented that the scores were consistent with the 1998 test results which had been thought to be the result of malingering, and that the plaintiff's work history as a foreman was inconsistent with mild mental retardation. (Tr. 475-7). He conceded that the plaintiff had relatively poor grades in school. (Tr. 476). However, reasonable grounds were advanced for not finding that the plaintiff met the Commissioner's Listing of Impairment Section 12.05C. Dr. McKeown's testimony regarding the plaintiff's anxiety was relatively limited, although as previously indicated, this was the purpose of the remand. He asserted that the "initial evaluation" did not suggest an anxiety disorder (Tr. 473), but a review of this report shows that Mr. Leisenring found the plaintiff to be rather tense and nervous, noted that he took Valium every day, and diagnosed a generalized anxiety disorder. (Tr. 257-9). Otherwise, the ME testified that he did not feel that anxiety or depression would produce any significant degree of difficulty because there was no indication of treatment other than medication. (Tr. 478).

7

Although failure to seek treatment can, in some circumstances, be evidence that a claimant's condition is less severe than he asserts, such failure is much less than compelling where the plaintiff has few financial resources, as here, and probable borderline intellectual functioning to low average intelligence. See, e.g., McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990); Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1051 (6th Cir. 1983). Therefore, of the two reasons advanced by the ME for not accepting the opinions of the examining source, one was mistaken, and the other is questionable.

Under the circumstances of this particular case, with two prior remands, and no discernible progress by the defendant in addressing the issue clearly delineated in both memorandum opinions, an order and judgment will enter awarding benefits to the plaintiff.

This the __20__ day of January, 2004.

_signature_
G. WIX UNTHANK
SENIOR JUDGE